UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SIOUX FALLS PIZZA COMPANY, INC., a South Dakota corporation formerly known as Pinnacle Pizza, Inc., a South Dakota corporation, | * * * * * | CIV 11-4047-RAL |
| Plaintiff, | * * | OPINION AND ORDER CONCERNING CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| vs. | * * | |
| LITTLE CAESAR ENTERPRISES, INC., a Michigan corporation, | * * * | |
| Defendant. | * | |

Plaintiff Sioux Falls Pizza Company, Inc. ("Sioux Falls Pizza") sued Defendant Little Caesar Enterprises, Inc. ("Little Caesar") after Little Caesar gave notice that it deemed Sioux Falls Pizza not to have the right to renew its agreements to operate Little Caesar franchises beyond May 30, 2011. Sioux Falls Pizza sought declaratory relief that it was entitled to renew the franchise agreements. Doc. 9. In the alternative, Sioux Falls Pizza sought a declaration that it was relieved of any duty not to compete or to re-sell certain items to Little Caesar. Sioux Falls Pizza also filed a motion for preliminary injunction to allow it to operate the franchises after May 30, 2011, and during the pendency of the case. Doc. 10.

Sioux Falls Pizza and Little Caesar reached an agreement memorialized in a joint motion and stipulation regarding preliminary injunctive relief and expedited litigation. Doc. 17. In short, the parties agreed that Sioux Falls Pizza could continue to operate its three Little Caesar franchises past May 30, 2011, the parties would present the case for decision by this Court on cross-motions for summary judgment, and the extension of the franchise agreements would be without prejudice to Little Caesar's position that the franchise agreements with Sioux Falls Pizza were not subject to a ten-year renewal under the circumstances. Doc. 17.

Both Sioux Falls Pizza and Little Caesar now have filed motions for summary judgment. Doc. 27; Doc. 31. The main question framed by the cross-motions for summary judgment is whether a breach of contract by Sioux Falls Pizza through filing a lawsuit in 2004 in contravention of the franchise agreements permits Little Caesar to avoid automatic renewal of the franchise agreements for ten years. This somewhat straightforward issue becomes more difficult because, through a class action lawsuit settlement, the automatic renewal language of the franchise agreements was displaced by language written to amend terms of a form franchise agreement different from the one between these parties.

Both Sioux Falls Pizza and Little Caesar filed statements of undisputed material facts, Doc. 28; Doc. 33, and both responded to the other party's statement of undisputed material facts by admitting most of the facts and contesting some characterizations of the facts. Doc. 39; Doc. 41. This Court draws the facts from the portions of the statements of material facts that are either undisputed or not subject to genuine dispute. As the parties contemplated in their joint motion and stipulation, the issues in this case can be decided under Rule 56 of the Federal Rules of Civil Procedure because this case turns on contract interpretation and not on resolution of any genuine issue of material fact.

## I. Undisputed Facts

Sioux Falls Pizza is a South Dakota corporation that operates Little Caesar franchises in three separate Sioux Falls locations. Doc. 33 at ¶ 2; Doc. 41 at ¶ 2; Doc. 28 at ¶ 1; Doc. 39 at ¶ 1. Sioux Falls Pizza previously was known as Pinnacle Pizza Company, Inc. ("Pinnacle") until a name change in April of 2011. Doc. 33 at ¶ 2; Doc. 41 at ¶ 2. This Court by using "Sioux Falls Pizza" means to refer to both the predecessor and current company.

2

Little Caesar is a Michigan corporation with its principal place of business in Detroit, Michigan. Doc. 33 at ¶ 1; Doc. 41 at ¶ 1. Diversity of citizenship jurisdiction exists under 28 U.S.C. § 1332 because the value of renewal of three Little Caesar franchise agreements in the Sioux Falls market exceeds $75,000.00.[1] See Hedberg v. State Farm Mut. Auto Ins. Co., 350 F.2d 924, 928 (8th Cir. 1965); Noel v. Liberty Bank of Ark., 2010 WL 2804331, at *1 (E.D. Ark. 2010); 14AA Wright & Miller, Federal Practice and Procedure, § 3708 (4th ed. 2009).

In the early 1990s, Little Caesar and Sioux Falls Pizza entered into three separate franchise agreements, each of which have identical terms material to the issues in this case. The franchise agreements contemplated that Sioux Falls Pizza would run three Little Caesar franchises in Sioux Falls. Doc. 33 at ¶¶ 1, 3; Doc. 41 at ¶ 3; Doc. 28 at ¶ 1. The franchise agreements expired by their terms on May 31, 2011, but allowed Sioux Falls Pizza the right to renew them for an additional ten years if certain conditions existed. Doc. 33 at ¶ 4; Doc. 41 at ¶ 4. The language in the initial franchise agreements signed by Little Caesar and Sioux Falls Pizza allowed for automatic renewal if, under Section XVI.C.:

> Franchise Owner is not in default, and has never been in substantial default of any provisions of this Agreement, or any amendment hereof or successor hereto, and Franchise Owner is not in arrears with respect to any indebtedness incurred in connection with its business.

Doc. 9-2, p.13.

---

[1] Before the filing of this lawsuit, Sioux Falls Pizza had reached an agreement to sell its business for $700,000.00 to a third party, subject to Little Caesar's approval of the sale and renewal of franchises for the prospective new owner. Little Caesar declined to approve the sale, and the buyer backed out.

3

In 1999, certain Little Caesar franchisees—not including Sioux Falls Pizza—brought suit against Little Caesar in Texas state court under the caption <u>Hotchkiss v. Little Caesar Enterprises, Inc.</u>, Civil Action No. 99-CI-16042 ("<u>Hotchkiss</u> Litigation"). Doc. 33 at ¶ 10; Doc. 41 at ¶ 10. The Texas state court certified the <u>Hotchkiss</u> Litigation as a class action of Little Caesar franchisees. Doc. 33 at ¶ 11; Doc. 41 at ¶ 11. Franchisees of Little Caesar were given an opportunity to opt-out of the class; Sioux Falls Pizza did not opt-out of the class. Doc. 33 at ¶¶ 11, 15; Doc. 41 at ¶¶ 11, 15. A settlement agreement was reached in the <u>Hotchkiss</u> Litigation, and notice was provided to class members of the existence of the settlement agreement ("<u>Hotchkiss</u> Settlement Agreement"). Doc. 33 at ¶¶ 12-13; Doc. 41 ¶¶ 12-13. The notice provided a summary to class members of the <u>Hotchkiss</u> Settlement Agreement, including describing an amendment to the franchise agreements that purportedly would:

> eliminate requirement that a franchisee must never have been in default of the franchise agreement, and any other agreement, or the Little Caesar Manuals, in order to attain a ten-year renewal of the franchise agreement.

Doc. 28 at ¶ 13; Doc. 39 at ¶ 13. The notice also advised that it was "only a summary" and that references should be made to the settlement agreement "for a full statement of its provisions." Doc. 33 at ¶ 14; Doc. 41 at ¶ 14.

The <u>Hotchkiss</u> Settlement Agreement itself provided:

> . . . the franchise agreements between [Little Caesar] and the Settlement Class are reformed by this Agreement and the Court's final order and judgment approving the same, to the extent said franchise agreements are in conflict with any provision of this Agreement, but otherwise such franchise agreements remain in full force and effect.

Doc. 21-1 at p.17; <u>Hotchkiss</u> Settlement Agreement at ¶ 17.1. The <u>Hotchkiss</u> Settlement Agreement also stated:

4

> In addition to any other amendments to such franchise agreements made necessary by this Agreement, the Parties hereby agree on specific contract language finalizing additional amendments to the [Little Caesar] franchise agreements set forth in Exhibit D hereto.

Doc. 21-1 at p.17; Hotchkiss Settlement Agreement at ¶ 17.2. Exhibit D to the Hotchkiss Settlement Agreement contained modifications to the Little Caesar franchise agreement. Doc. 21-1 at p. 50-56. Both Sioux Falls Pizza and Little Caesar agree that the Hotchkiss Settlement Agreement and the language changes thereunder apply to Sioux Falls Pizza's franchise agreements with Little Caesar. Doc. 33 at ¶ 15; Doc. 41 at ¶ 16.

Little Caesar, through the years, had revised its form franchise agreement and used different franchise agreements with its various franchisees. While many franchisees have nearly identical franchise agreements, there are variations among franchise agreements used by Little Caesar. The language contained in Exhibit D to the Hotchkiss Settlement Agreement revised standard franchise terms that were different from terms in franchise agreements between Sioux Falls Pizza and Little Caesar. For example, the "current provision" for renewal of franchises referred to in the Hotchkiss Settlement Agreement is denominated Section 2.2, while the renewal of franchise language in the franchise agreements between Sioux Falls Pizza and Little Caesar is at Section XVI. Compare Doc. 21-1 to Doc. 9-2.

Both Sioux Falls Pizza and Little Caesar agree that the Hotchkiss Settlement Agreement was intended to make changes to the franchise agreement favorable to franchisees. Both Little Caesar and Sioux Falls Pizza acknowledge that the Hotchkiss Settlement Agreement was not designed to make non-renewal of franchise agreements easier for Little Caesar to accomplish.

As concerns conditions for renewal of franchise agreements, Exhibit D to the Hotchkiss Settlement Agreement addressing the subject, in its entirety, stated:

CONDITIONS OF RENEWAL

Purpose: Modify current renewal condition that franchisee must never have been in default of any franchise or other LCE agreement.

Current Provision

2.2 - <u>Renewal Term of Franchise</u>: Franchisee may, at its option, renew this franchise for one renewal term of ten (10) years, subject to the following prerequisites:

2.2.3   Franchisee shall not be in default of any provision of this Agreement, or any other agreement between Franchisee and Little Caesar or Little Caesar's affiliates, or any standards set forth in the Manuals (as defined in Section 4.3), and Franchisee shall have complied with the Manuals and all such agreements during the terms thereof.

Change

2.2 - <u>Renewal Term of Franchise</u>: Franchisee may, at its option, renew this franchise for one renewal term of ten (10) years; subject to the following prerequisites:

2.2.3   Franchisee shall have satisfied all monetary obligations owed by Franchisee to Little Caesar and its affiliates and shall not be in default of any provision of this Agreement, any amendment hereof or successor hereto, or any other agreement between Franchisee and Little Caesar or its affiliates, and, in the reasonable judgment of Little Caesar, Franchisee shall have substantially and timely complied with all the terms, conditions and obligations of such agreements during the terms thereof and the Manuals (as defined in Section 4.3).

Doc. 21-1 at p. 51; <u>Hotchkiss</u> Settlement Agreement at Exhibit D. Both Sioux Falls Pizza and Little Caesar agree that the "Change" language denoted as paragraph 2.2 and 2.2.3 above controls whether Sioux Falls Pizza is entitled to a renewal of ten years from May 30, 2011. However, Sioux Falls Pizza and Little Caesar disagree on how to interpret and apply this language.

Sioux Falls Pizza—then known as Pinnacle—sued Little Caesar on October 25, 2004, in a lawsuit unconnected to the <u>Hotchkiss</u> Litigation. Doc. 28 at ¶ 2; Doc. 39 at ¶ 2; Doc. 33 at ¶ 21; Doc. 41 at ¶ 21; <u>Pinnacle Pizza Co., Inc. v. Little Caesar Enter., Inc.</u>, 560 F. Supp. 2d 786 (D.S.D. 2008) aff'd 598 F.3d 970 (8th Cir. 2010). The parties call the case the "Hot-N-Ready" litigation.

See Pinnacle Pizza Co., Inc., 560 F. Supp. 2d 786. Sioux Falls Pizza, after exposure to Little Caesar marketing ideas and in an effort to expand its business, used the phrase "Hot-N-Ready" to advertise pizza being ready for pickup at its Little Caesar stores in Sioux Falls at a reduced rate on certain days. This marketing strategy proved successful in generating more business for Sioux Falls Pizza. Based at least in part on the success in Sioux Falls of the "Hot-N-Ready" concept, the concept and use of the phrase "Hot-N-Ready" spread throughout Little Caesar franchises. Little Caesar provided its franchises with advertising material and registered the phrase "Hot-N-Ready" as a trademark. Sioux Falls Pizza, witnessing the spread of what it considered its concept and perceiving a right or perhaps an opportunity to capitalize thereon, sued Little Caesar claiming millions of dollars of damages on multiple theories of relief. Little Caesar counterclaimed alleging that Sioux Falls Pizza was in breach of its franchise agreement by contesting Little Caesar's entitlement to the trademark. Id. Chief Judge Karen E. Schreier of this Court granted summary judgment to Little Caesar, id., and the United States Court of Appeals for the Eighth Circuit affirmed. Pinnacle Pizza Co., Inc. v. Little Caesar Enterprises, Inc., 598 F.3d 970 (8th Cir. 2010). The Eighth Circuit expressly held "that [Little Caesar] was entitled to summary judgment on its counterclaim for breach of contract." Id. at 981-82.

The Eighth Circuit opinion ended the prior litigation between these parties, but evidently did not end the hard feelings between the parties. From Little Caesar's perspective, the "Hot-N-Ready" litigation endangered its ownership of the "Hot-N-Ready" trademark and business model, and the conclusion that Sioux Falls Pizza breached the franchise agreements is significant and indeed the basis for non-renewal of the franchise agreements now. Doc. 33 at ¶¶ 28-32; Doc. 41 at ¶¶ 28-32. From Sioux Falls Pizza's perspective, Little Caesar's counterclaim for breach of contract was a small segment of the case, was not significant, and resulted in an award of monetary damages of one

7

dollar, which judgment promptly was satisfied. Doc. 28 at ¶¶ 7-8; Doc. 39 at ¶¶ 7-8. Sioux Falls Pizza continued to operate the three Little Caesar franchises in Sioux Falls throughout the "Hot-N-Ready" litigation and thereafter without any other asserted breach of any agreement with Little Caesar.

On July 28, 2010, two and a half months after the Eighth Circuit denied rehearing in the "Hot-N-Ready" litigation, Little Caesar sent a letter to Sioux Falls Pizza advising that Little Caesar "will not renew any of the franchise agreements for the Little Caesar Units when they expire on May 30, 2011." Doc. 9-1. The letter notified Sioux Falls Pizza that it would have no further rights to operate or to transfer its business. Id. To justify non-renewal, Little Caesar advised Sioux Falls Pizza of its "substantial default under the expiring franchise agreements," due to filing a lawsuit contesting Little Caesar's ownership of the "Hot-N-Ready" trademark and concept. Doc. 9-1. The reference in the letter to "your substantial default" paralleled language in the renewal provisions of the original franchise agreements, which in Section XVI.C required that Sioux Falls Pizza never have been in "substantial default" to obtain automatic renewal of the terms. The Hotchkiss Settlement Agreement modifications of the renewal provision did not contain language referring to a "substantial default."

After this lawsuit began, Little Caesar proffered an alternative reason for non-renewal that Sioux Falls Pizza had not secured leases for its three restaurant sites for another ten years. Doc. 33 at ¶¶ 41-43. Sioux Falls Pizza owns one of the sites where it operates a Little Caesar franchise and has presented affidavits from the two landlords by which the landlords express a desire to extend leases to Sioux Falls Pizza if it obtains renewal of its franchise agreements. Doc. 46; Doc. 47. Both the notice letter from Little Caesar and the state of the record make clear that Sioux Falls Pizza's entitlement to renewal of its franchise agreements hinges on whether pursuing and losing the "Hot-

N-Ready" litigation caused Sioux Falls Pizza to lose under the contract language the entitlement to automatic renewal of the franchise agreements.

## II. Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Rule 1 of the Federal Rules of Civil Procedure). On summary judgment, courts view "the evidence in the light most favorable to the nonmoving party." Martinez v. W.W. Grainger, Inc., 664 F.3d 225, 229 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).

### B. Dispute over Renewal of Franchise Agreements

Both parties agreed at oral argument that the modifications made by the Hotchkiss Settlement Agreement apply here because Sioux Falls Pizza did not opt out of the Hotchkiss Settlement Agreement. This Court must apply the new language derived from the Hotchkiss Settlement Agreement when determining if Sioux Falls Pizza is entitled to automatic renewal of its three franchises. The parties agree that the Hotchkiss Settlement Agreement modified conditions of renewal by implementing the following change:

CONDITIONS OF RENEWAL

<u>Change</u>

    2.2 - <u>Renewal Term of Franchise</u>: Franchisee may, at its option, renew this franchise for one renewal term of ten (10) years; subject to the following prerequisites:

    2.2.3   Franchisee shall have satisfied all monetary obligations owed by Franchisee to Little Caesar and its affiliates and shall not be in default of any provision of this Agreement, any amendment hereof or successor hereto, or any other agreement between Franchisee and Little Caesar or its affiliates, and, in the reasonable judgment of Little Caesar, Franchisee shall have substantially and timely complied with all the terms, conditions and obligations of such agreements during the terms thereof and the Manuals (as defined in Section 4.3).

Doc. 21-1 at p.51.

    Sioux Falls Pizza met the conditions set forth in the first portion of the "Change" to Section 2.2.3, that "Franchisee shall have satisfied all monetary obligations owed by Franchisee to Little Caesar and its affiliates and shall not be in default of any provision of this Agreement, any amendment hereof or successor hereto, or any other agreement between Franchisee and Little Caesar or its affiliates." It is noteworthy that the capitalization of "Agreement" in the first portion of Section 2.2.3 is a clear reference to the franchise agreement. Both Sioux Falls Pizza and Little Caesar at the hearing on cross-motions for summary judgment acknowledge that there are a series of agreements that a franchisee of Little Caesar enters into, in addition to the franchise agreement itself. Little Caesar makes no argument that Sioux Falls Pizza has failed to satisfy monetary obligations or that Sioux Falls Pizza is in default at the present time of any of its franchise agreements or other agreements.

    Interpretation and application of the second portion of Section 2.2.3 is where the debate lies. Little Caesar asserts that, in "its reasonable judgment," Sioux Falls Pizza has failed to "substantially and timely [comply] with all the terms, conditions and obligations of such agreements," because Sioux Falls Pizza breached the franchise agreements by pursuing the "Hot-N-Ready" litigation. That

is, Little Caesar reads the language "such agreements" to mean the franchise agreements, amendments thereto and any other ancillary agreement between Sioux Falls Pizza and Little Caesar.

By contrast, Sioux Falls Pizza reads "such agreements" to refer to agreements other than the franchise agreements. Sioux Falls Pizza argues that because "Agreement" as used earlier in Section 2.2.3 means the franchise agreement, "such agreements" must mean only other agreements. Sioux Falls Pizza points to material outside of the language of Section 2.2.3 to support this interpretation. First, the stated "purpose" of the change to the renewal provision was to "modify current renewal condition that franchisee must never have been in default of any franchise or other [Little Caesar] agreement." Doc. 21-1 at p. 51. Second, the notice of the Hotchkiss Settlement Agreement described the amendment as one to "eliminate requirement that a franchisee must never have been in default of the franchise agreement, and any other agreement, in order to attain a ten-year renewal." Doc. 28 at ¶ 13; Doc. 39 at ¶ 13. Third, Sioux Falls Pizza contends that if Little Caesar's interpretation prevails, Sioux Falls Pizza's existing franchise agreement requiring a "substantial default" would have been more favorable to it than the Hotchkiss Settlement Agreement, which makes no sense because the Hotchkiss Settlement Agreement was to institute changes more favorable to franchisees on renewal of franchise agreements.

The Supreme Court of South Dakota has "generally recognized that parties may agree to be bound by the law of a particular state." Butler Mach. Co. v. Morris Const. Co., 682 N.W.2d 773, 776 (S.D. 2004) (quotation omitted); see also Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc., No. 1:11-CV-01026, 2012 WL 32440, at *3 (D.S.D. Jan. 5, 2012) ("In South Dakota, parties may bind themselves to the law of a particular state with a valid choice-of-law clause."). The three franchise agreements entered into between Sioux Falls Pizza and Little Caesar specify that Michigan

11

law governs the agreements. Doc. 9-2 at ¶ XXIV.A. Neither party contests that Michigan Law governs, and this Court applies Michigan law to the contract claims.

There appears to be nothing peculiar about Michigan laws regarding contract interpretation. Michigan law requires a court to enforce contracts according to their terms and to derive the intent of the parties from the contract as a whole. See Citizens Ins. v. Pro-Seal Service Grp., 477 Mich. 75, 82; 730 N.W.2d 682 (2007); Henderson v. State Farm Fire Cas. Co., 460 Mich. 348, 353-54; 596 N.W.2d 190 (1999); Comerica Bank v. Cohen, 291 Mich. App. 40, 46; 805 N.W.2d 544 (2010). The language of a contract is to be given its ordinary and plain meaning. Meagher v. Wayne State Univ., 222 Mich. App. 700, 721-22; 565 N.W.2d 401 (1997). The terms of a contract must be enforced as written under Michigan law when there is no ambiguity. Citizens Ins., 730 N.W.2d at 685; Henderson, 596 N.W.2d at 193-94. The mere fact that relevant terms are not defined does not render the contract ambiguous, and such terms then must be interpreted in accordance with their commonly used meanings. Citizens Ins., 730 N.W.2d at 686; Henderson, 596 N.W.2d at 193-94. A contract is ambiguous when, by giving effect to the entirety of the contract, the provisions are reasonably capable of conflicting interpretations. Klapp v. United Insurance Grp. Agency, Inc., 468 Mich. 459, 467; 663 N.W.2d 447(2003). If contract language is clear, construction of the contract is a question of law for the court. Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist., 452 Mich. 309, 323; 550 N.W.2d 228 (1996). If the contract language is unclear or susceptible to multiple meanings, construction of the contract becomes a question of fact. Id. When a contract is ambiguous, extrinsic evidence may be used by the jury to discern the intent of the parties. Klapp, 663 N.W.2d at 454.

The language of Section 2.2.3 implemented through the Hotchkiss Settlement Agreement is not ambiguous under the principles of Michigan contract interpretation. Section 2.2.3 clearly sets forth criteria for the franchisee to have the option for one renewal term of ten years. Those criteria

are: 1) "Franchisee shall have satisfied all monetary obligations owed by Franchisee to Little Caesar and its affiliates," and 2) Franchisee "shall not be in default of any provision of this Agreement [meaning the franchise agreement], any amendment hereof or successor hereto, or any other agreement between Franchisee and Little Caesar or its affiliates," and 3) "in the reasonable judgment of Little Caesar, Franchisee shall have substantially and timely complied with all the terms, conditions, and obligations of such agreements during the terms thereof and the Manuals." Doc. 21-1 at p. 51 (numbers and bracketed material added). There is no genuine dispute in this case that Sioux Falls Pizza has satisfied the first two parts of Section 2.2.3 and desires to have a ten year renewal of the franchise agreement.

As to the third part of Section 2.2.3, Sioux Falls Pizza argues that there exists an ambiguity because the phrase "such agreements" may or may not include the franchise agreement. An earlier part of Section 2.2.3 capitalizes "Agreement" in referring to the franchise agreement in the clause "this Agreement, any amendment hereof or successor hereto, or any other agreement between Franchisee and Little Caesar or its affiliates." The very next clause is the one referring to compliance with "such agreements." The ordinary and plain meaning of this sentence is that "such agreements" refers to the immediately preceding clause including "this [Franchise] Agreement, any amendment hereof or successor hereto, or any other agreement between Franchisee and Little Caesar or its affiliates." A contrary interpretation—as urged by Sioux Falls Pizza—would create the counterintuitive result that Little Caesar in its "reasonable judgment" could choose not to renew based on a violation of an amendment to the franchise agreement or some agreement ancillary to the franchise agreement, but not for a prior breach of the franchise agreement itself.

The provision of Section 2.2.3 requiring Little Caesar to exercise "reasonable judgment" in determining whether a franchisee has substantially and timely complied with contractual obligations

13

restricts Little Caesar from deeming every little compliance issue or unsubstantial contract defaults in the past to be grounds for non-renewal of a franchise agreement. Unfortunately for Sioux Falls Pizza, the Eighth Circuit has found that the "Hot-N-Ready" litigation was a breach of the franchise agreements. Pinnacle Pizza, 598 F.3d at 981-82. A court finding of breach of the contractual provision debarring franchisees from suing Little Caesar over the validity of its proprietary marks establishes grounds as a matter of law for Little Caesar to exercise its "reasonable judgment" to determine that Sioux Falls Pizza has not "substantially and timely complied" with terms of the franchise agreement and thus is not entitled to a ten year renewal under the third part of revised Section 2.2.3. See id.; Doc. 21-1 at p. 51.

This Court is cognizant that the Hotchkiss Settlement Agreement language, while intending to make it more difficult for Little Caesar to avoid automatic franchise renewal, introduced language into the franchise agreements of Sioux Falls Pizza that at least arguably makes it easier for Little Caesar to justify non-renewal. However, even under the prior language of Sioux Falls Pizza's franchise agreements, the "Hot-N-Ready" litigation would constitute a "*substantial* default" under the franchise agreements. Doc. 9-2 at ¶ XVI.C (emphasis added). Although the franchise agreements do not define "substantial," this Court "interpret[s] [the] term in accordance with its commonly used meaning." Bloomfield Estates Improvement Ass'n, Inc. v. City of Birmingham, 479 Mich. 206, 215; 737 N.W.2d 670 (2007). The Merriam-Webster Dictionary defines "substantial" as "important, essential; . . . significantly great." Merriam-Webster's Collegiate Dictionary, 1170 (10th ed. 2000). The "Hot-N-Ready" litigation, a default under the franchise agreements that Sioux

Falls Pizza "expressly"[2] promised to avoid and that had the potential to deprive Little Caesar of the "Hot-N-Ready" trademark and concept, fits within the plain meaning of "substantial."

### C. Other Contract Disputes

Count II of the Amended Complaint seeks declaratory relief that Section XVII.C(3)(a) of the franchise agreements is unenforceable because that provision restricts Sioux Falls Pizza from competing for two years after the franchise agreement expires in contravention of what non-compete agreements are permissible under South Dakota law. Doc. 9; see SDCL 53-9-9 through 11. Little Caesar at one point advised the owners of Sioux Falls Pizza that Little Caesar intended to seek to enforce that non-compete provision. Little Caesar has advised the Court that it "elects not to oppose" Sioux Falls Pizza's summary judgment motion seeking to declare the non-compete language unenforceable. Doc. 38 at p.7.

Count III of the Amended Complaint seeks declaratory relief limiting any right of first refusal of Little Caesar to assets "unique" to Little Caesar. Doc. 9. Section XIX.C.3 of the franchise agreements excepts from any right of repurchase by Little Caesar "items that are not uniquely identified with Little Caesar." Little Caesar asserts that there might be a dispute of fact over what assets are "uniquely identified with Little Caesar," urges this court not to grant summary judgment, and suggests that, once this Court rules on the main issue in this case, "the equipment issue will be resolved by the parties." Doc. 38 at 6-7. Because it is unclear whether there exists any true controversy or dispute over application of Section XIX.C.3 of the franchise agreements, this Court will postpone entry of final judgment for thirty-five (35) days from the date of this decision and

---

[2] Paragraph V.A.2 of the initial franchise agreement provides that Sioux Falls Pizza "expressly covenants that during the terms of this agreement . . . [Sioux Falls Pizza] shall not directly or indirectly contest . . . the validity or ownership of [Little Caesar's] Proprietary Marks." Doc. 9-2 at ¶ V.A.2.

15

directs that the parties alert this Court no later than twenty-one (21) days from the date of this decision whether there exists any remaining issue for this Court to address before entry of final judgment.

### III. Conclusion

For the reasons explained herein, it is hereby

ORDERED that the Motion for Preliminary Injunction (Doc. 10) is denied as moot. It is further

ORDERED that Sioux Falls Pizza's Motion for Summary Judgment (Doc. 27) is granted to the extent that the non-compete language of Section XVII.C.3.a is declared to be unenforceable as to Sioux Falls Pizza. It is further

ORDERED that Sioux Falls Pizza's Motion for Summary Judgment (Doc. 27) otherwise is denied. It is further

ORDERED that Little Caesar's Motion for Summary Judgment (Doc. 31) is granted. It is further

ORDERED that Sioux Falls Pizza must terminate no later than thirty-five (35) days from today's date its operation of its three Little Caesar franchises and that the parties within twenty-one (21) days notify this Court if any issue remains under the provisions of Section XIX.C.3 regarding repurchase of certain equipment.

Dated March 14th, 2012.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE